*Tilghman C. J.
John Hoge having obtained a warrant and survey for the land in dispute, conveyed to Correy the lessor of the plaintiff by deed dated 12th May 1790. Correy afterwards received a patent, as assignee of Hoge, but he omitted to have his deed from Hoge recorded. After the issuing of the patent to Correy, Hoge sold and conveyed the same land to Jeremiah Rees, under whom the defendants claim. This last deed was recorded, and the defendants contend, that not having received notice of the deed from Hoge to Correy, it was void, by the act of 18th March 1775.
If this case turned solely on the deed from Hoge to Correy, the cause would be clearly with the defendants; because, as to them, the unrecorded deed of which they had received no notice, would be void. But it is material, that Correy has the legal title, for the patent is the consummation of the title. It has been frequently said that a warrant and survey in Pennsylvania give the legal title. This is so far true, that a warrant and survey are sufficient title to support an ejectment. But the legal title is not complete till the issuing of *133 the patent. In the present instance, the deed from Iloge to Correy was so far from conveying the legal title, that it was at that time uncertain whether Correy would ever obtain the legal title; for we find that Casper Eckert afterwards entered a caveat against the issuing of a patent on Iloge’s survey. It is also material, that at the time of Correy’s obtaining the patent, he had the complete equitable title by assignment from Hoge; so that upon receiving the patent, he had complete title both at law and in equity. It is difficult to conceive how such a title can be shaken, because it is impossible that there could be a subsequent purchaser under Hoge, who would not be chargeable with some neglect; and the legal title is not to be taken away, in order to let in a person guilty of negligence. "When Jeremiah Rees made his purchase, he saw that he was buying an imperfect title. It was his business therefore to make inquiry in the land office, where he would immediately have found that the land had been patented, and on searching in the rolls’ office, where at that time patents were directed by law to be recorded, he would have seen the patent, reciting the deed poll from Hoge to Correy. The defendants rely on the act of assembly, by which the deed from Hoge to Correy is void. But the *plaintiff stands not in need of that deed to make out his title. The patent is in itself a complete legal title. It lies on the defendants therefore to show, either a superior equity in themselves, or some fraud in Correy, neither of which they have done.
It has been said, that if this cause be decided in favor of the plaintiff, the act of assembly for recording of deeds will have no effect, as to conveyances prior to the patent. But this is not so. Between two purchasers, neither of whom had a patent, the act would have full effect; and in the cause now before us, if Jeremiah Rees had purchased and put his deed on record, prior to the issuing of the patent to Correy, it would have made a very different case, concerning which however I forbear to give an opinion. On the other hand, it would have most pernicious cousequences, to establish it as a principle, that a man who had sold his title under a warrant and survey, or a location, might afterwards defeat the patentee, by conveying to a third person without notice; because we know very well that it has been the practice of the land office, to issue patents to those persons who produced assignments of the warrant and survey, or the location, without inquiring whether such assignments were recorded or not; and in thousands of cases they have not been recorded. I *134 am therefore of opinion, that Correy’s title was good, and that the judgment of the Circuit Court should be affirmed.
Yeates J.
The Court are confined to the facts set forth in this special verdict; and the question is, whether the provisions of the supplement to the act, entitled “an act for the acknowledgment and recording of deeds” passed on the 18th March 17^5,1 Dali. St. Laws 703, operate as a bar to the recovery of the lands in dispute by the plaintiff?
The first section of our law of 1775 is evidently copied from the British statute of 7 Ann. c. 20. The intention of both acts plainly was, to secure subsequent purchasers and mortgagees against prior secret conveyances and fraudulent incumbrances. When a person has no notice of a prior conveyance, there the registering or recording his subsequent conveyance in the manner directed in each county, shall prevail against the prior; but if he had notice of a prior -^conveyance, then that was not a secret conveyance by which he could be injured. Many cases in England have settled the construction of the English statute. 1 Eq. Ca. Ab. 358; 1 Ves. 64; Ambl. 436,626. And the same decisions have taken place on our law here. The ground of the determination is, that the taking of a legal estate after notice of a prior right, makes a person a mala fide purchaser. It is a species of fraud, and dolus malus itself in the civil law, for he knew the first purchaser had the clear right of the estate, and after knowing that, he takes away the right of another person by getting the legal estate, 2 Atk. 654.
That the assignment of the beneficial interest in a warrant is within our recording act, I have no doubt. If it is not a complete legal right, it is certainly an equitable one; and equitable as well as legal titles are the objects of this law. It is singular, therefore, that so very few of these transfers are put upon record; like the useless scaffolding of a building after it is completed, they are usually thrown aside. But where a case rests merely on two conveyances of a warrant right, the subsequent purchaser having no notice either express or implied of the prior de'ed, and recording his deed first, I should hold that he would be preferred. The case, however, now before us, is in my apprehension essentially contradistinguished therefrom.
It is necessary to attend to the dates of the different papers. The warrant to Hoge was dated 6 April 1785, and the survey made on the 3d June following. Hoge on 12th May 1790 conveyed to John Correy, and Eckert entered a caveat against Hoge 17th February 1792. On the 17th July 1798 a patent issued to Correy, reciting the deed poll which *135 had been made to him, which was recorded on the 26th of the same month in the rolls’ office; and subsequent to all these, on the 18th February 1800, Hoge conveyed to Jeremiah Rees, which deed was recorded on the 11th October following; but the deed from Hoge to Correy has not been recorded.
It has been urged by the defendants’ counsel, that nothing short of actual fraud will affect a purchaser under the statute 7 Ann. e. 20, which must be clearly proved. Suspicion will not do. Apparent fraud or clear undoubted notice are of relief. Hine v. Dodd, 2 Atk. 275, was *cited in support of the position. In that case, Lord Hardwicke said, there was barely the evidence by one witness of the defendant’s confession, in contradiction to his answer upon oath, and contrary to a positive act of parliament, made to prevent any temptation to perjury from contrariety of evidence. I admit that it must be satisfactorily proved, that the person who registers the subsequent deed must in the eye of the law have known of the prior deed; but I do not agree, that actual notice by the party interested is in such cases indispensably necessary to bring home such knowledge to him. The special verdict, it is true, excludes the conclusion of actual notice to Rees, that fact not being found. But it is fully settled, that there is no difference between actual and constructive notice in its consequences, except as to guilt; if there was, notice would be avoided in every case by employing an agent. Ambl. 626; Sugd. 490. The meaning of the registering acts according to Lord Hard wicke, was to prevent parol proofs of notice or not notice. The act is notice to ohe parties, and a notice to every body. 2 Atk. 275. The same remark has often been applied to our recording acts. It is said in our books, that constructive notice in its nature, is no more than evidence of notice, the presumptions of which are so violent, that the court will not allow even of its being controverted. Sugd. 492. The question then will Be reduced to a single point; was Rees bound under the circumstances of this case to take notice of the patent granted to Correy, the enrolment whereof preceded the date of his own deed above eighteen months ?
The established rules in equity are, that what is sufficient to put a purchaser upon an inquiry is good notice; 1 Atk. 489; that is, where one has sufficient information to lead him to a fact, he shall be deemed conusant of it. Therefore if a man knows that the legal estate is in a third person at the time he purchases, he is bound to take notice what the trust is. 2 Freem. 137.
*136 In all cases, where the purchaser cannot make out a title but by a deed, which leads him to another fact, whether by description of the parties, recital or otherwise, he will be deemed conusant thereof; for it was crassa negligentia, that he sought not after it. 1 Cha. Ca. 287; 2 Cha. Ca. 246; Ambler 318; 2 Vern. 384, 662.
*Now Rees was well aware of the original warrant and return of survey for the lands he was buying, being in the office of the surveyor general; and he was hound to know, that the uniform usage sanctioned by law, had ever been to record patents in the rolls’ office, and that this duty was specially enjoined by section tenth of the act of 9th April 1781. 1 Dali. St. Laws 891. The title only could be made out by the warrant and survey, which I hold he was bound to examine in the proper office, or take the consequences of his neglect. Had he sought for the original muniments of title, he would have been informed of the caveat by Eckert, and of the proceedings under it; he would have seen the endorsement on the return of survey, that it had heen returned on a certain day into the secretary’s office for patenting; and he would thereby be led fo the fact, from the recital in the record of the patent, that Hoge had executed a previous bill of sale to Correy. He would thus have been forewarned, and might have desisted from completing the purchase, or have procured an indemnification from the vendor. I consider it as a most important feature in the present case, that the strictly legal title of Correy was recorded previous to the execution of the deed to Rees; aud that the plaintiff’s right is much strengthened by the entry of the caveat against Hoge, and the decision of the Board of Property thereon, on which the patent was founded.
Upon the whole I am of opinion, that the plaintiff is not bound by the recording act of 1775, and that judgment be entered for him on the special verdict.
Brackenrid&e J. gave no opinion, the appeal being from his decision.
Judgment affirmed.
[Explained in Penrose v. Griffith, post, 288. Cited in 7 W. 276: 6 H. 301.]